## Gossom's Admr v. Gossom.
## Gossom v. Gossom, et al.

(Decided February 7, 1911.)

### Appeals from Warren Circuit Court.

Wills—Construction.—Where the testator has an imbecile boy
and devises to a trustee the sum of $3,000 to be used for clothing
and supporting the imbecile boy during his life, and then pro-
vides "it is my will that whatever sum of said $3,000 may be left

be distributed equally among his·brothers and sisters, &c.," it is evident that the testator had in mind the welfare of the boy and contemplated that the corpus of the trust fund might be used for the reasonable support and comfort of the boy.

GRIDER & HARDIN and SIMS & RODES for appellants.

WRIGHT & McELROY and J. M. SIMMONS for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

These two actions involving the same questions were consolidated below, and will be considered together on this appeal.

S. A. Gossom, after r˄aking his last will and testament, died a resident of Warren county, Kentucky. His will was probated in February, 1871. He left a widow, several sons and one daughter surviving him. His widow died in 1873. One of his sons, James T. Gossom, was an imbecile. After making certain devises to his other children, he made ·provision for his feeble-minded son, James, in clauses five and nine of his will, which alone are material to this controversy, and are as follows:

"Item 5. I will say to my executors hereinafter named and appointed, in trust for the use and benefit of my son, James T. Gossom, who is of unsound mind, the sum of three thousand dollars ($3,000.00) to accrue to them at my death, said sum of money to be kept on interest and to be used by my executors for clothing and support of my said son, James, and at his death said sum of three thousand dollars, and in the distribution of my estate he will be charged with that sum and believing that said sum of three thousand dollars $(3,000.00) will be sufficient to clothe and support him decently and comfortably during his life, I gave him no more of my estate and at his death, it is my will, that whatever sum of said three thousand dollars may be left be distributed equally among his brothers and sister or their descendants, except William G. Gossom, who is not to receive any part thereof, nor are his descendants to receive any part thereof."

"9th. I will and desire that at my death my son, Chas. A. Gossom, shall take charge of my son, James T. Gossom, and his effect herein devised to him, and shall manage and control both and for his services and attention he shall have the interest on the three thousand dollars

herein specially devised to my son, James T., and lastly, I hereby appoint my two sons, Chas. A. Gossom and Martin R. Gossom, executors of this my last will and testament and guardian of my two infant sons, Sandy C. Gossom and Tandy T. Gossom, and I request that they be permitted to qualify and act in both capacities without giving security.''

Upon the death of his father, C. A. Gossom, appellee in this action, took charge of the fund bequeathed to J. T. Gossom, and also took J. T. Gossom into his home where he kept and provided for him until his death in 1903.

In the year 1890, appellee brought an action in the Warren circuit court to settle his accounts as trustee of J. T. Gossom. Appellant, T. M. Gossom, and appellee's sister and other brothers, including J. T. Gossom, were made parties. During the proceedings the matter was referred to the master commissioner. The master commissioner filed his report, which was laid over for exceptions. On March 5th, 1891, the following order was entered:

''No exceptions having been taken to the report of the master commissioner filed herein, on a former day of this term, it is now ordered that said report be confirmed, and said settlement should be taken as the condition of the trust funds in the hands of the trustee as of date November 10th, 1890, and the balance as therein reported is held by the trustee as of that date, and said settlement shall be recorded as required by law. The master commissioner shall be allowed $50 for his services herein, and Mr. Simmons is allowed $10 for his services as guardian ad litem and Dulaney & Mitchell are allowed $25 for their services as attorneys for the trustee. All of said sums shall be taxed as costs and paid by C. A. Gossom as trustee, and he will take credit therefor in his next settlement. It is further ordered that this cause be now stricken from the docket with leave to reinstate for the purpose of requiring other settlements from time to time and for the proper management and control of the trust fund.''

The papers in this action can not be found. It appears from the proof, however, that at the time of this settlement, appellee had in his possession a balance of from $1,500 to $1,800.

In 1903, C. A. Gossom brought another suit for the settlement of his accounts. In this suit he presented his vouchers for amounts paid out since the settlement in

1890. Before the master commissioner made his report, however, these papers were also lost.

In these actions J. T. Gossom's administrator seeks to recover the balance of his intestate's estate; while T. M. Gossom seeks to recover the $3,000 trust fund and a tract of land which J. T. Gossom inherited. This land was sold by a decree of court, but the proceeds never came into the possession of appellee. The case was referred to the master commissioner, who, as a basis for his settlement, found that appellee in 1890 had in his hands a balance of $1,650. Allowing him a reasonable amount for boarding, clothing and taking care of J. T. Gossom, the master commissioner found that at the time of J. T. Gossom's death, the trust fund had been expended and no part of it remained in the hands of appellee. Judgment to this effect was accordingly entered, and T. M. Gossom and J. T. Gossom's administrator appeal.

It is earnestly insisted that item nine of S. A. Gossom's will conclusively shows that the testator intended that his son, Charles A. Gossom, should take charge of J. T. Gossom and his estate, and that for all of his services, in boarding, clothing, furnishing medical assistance, etc., he should receive only the interest on $3,000. This view, it is claimed is supported by clause five of the will, which directs that $3,000 should be loaned out. It will be observed, however, that in item five the testator expressed a belief that the sum of $3,000 would be sufficient to clothe and support J. T. Gossom decently and comfortably during his life. He did not devise the $3,000 absolutely to J. T. Gossom's brothers and sister upon his death, but he directed that whatever sum of the $3,000 might be left be distributed equally among his brothers and sister, etc. The use of this language, we think, makes it reasonably plain that the testator intended that the corpus of the trust fund, in case of necessity, should be used for the comfort and support of his feeble-minded boy. In other words, he had particularly in mind the welfare of the boy rather than the remote interests of those who might succeed to the trust fund. On the other hand, he intended that his son, C. A. Gossom, should have the interest on the fund for his services in managing and controlling both the fund and the unfortunate brother who was committed to his charge. In this way only can the two clauses of the will be reconciled, which it is always the duty of the court to do in cases of apparent conflict.

But even if there were any doubt as to the meaning of the testator, we are of opinion that it would be inequitable, at this late day, to give the will a different construction. All of appellee's brothers and his sister were parties to the action brought by appellee in 1890 to settle his accounts as trustee. The imbecile son was likewise a party. While the papers were lost, it does appear that the court held that there was a certain balance in the trustee's hands, and that that balance be taken as the basis for future settlements. For appellee it is contended that that balance was $1,500, while appellants contend it was as much as $1,800. It is perfectly clear, then, that whichever of these amounts is correct, appellee, at the time of that settlement, had used a portion of the trust fund and the court in effect held that he was entitled to do so, for he directed that that settlement be made the basis of future settlements. Evidently the same contention was made in that action that is now being made. The court's judgment was in effect a holding contrary to that contention. Appellee's sister and brothers did not appeal from the judgment in that case. That being true, and appellee having settled upon the theory that he could use the corpus of the trust fund for the reasonable support and maintenance of J. T. Gossom, and having, since the settlement, acted upon the same theory, it would not now be fair and just to him to require a settlement upon a different basis.

Being of the opinion that appellee had the right to expend the corpus of the trust fund for the reasonable support and comfort of J. T. Gossom, and that by the decided weight of the evidence the sums so expended were reasonably necessary for that purpose, we conclude that the judgment of the chancellor must be affirmed; and it is so ordered.